# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9168 | **DATE** | 11/14/2003 |
| **CASE TITLE** | Hattie Rucker vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiff's motion for summary judgment [15-1] is denied, and defendant's motion for summary judgment [17-1] is granted. The case is hereby terminated.
(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 17 2003 | |
| | Notified counsel by telephone. | | date docketed | 22 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| hmb | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
NOV 17 2003

| | |
|---|---|
| HATTIE RUCKER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 01 C 9168 ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

NAN R. NOLAN, Magistrate Judge:

Plaintiff Hattie Rucker seeks review of the final decision of defendant Jo Anne Barnhart, Commissioner of the Social Security Administration ("Commissioner"), denying Rucker's application for Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. §§ 416(i), 423. This matter is before the court on the parties' cross-motions for summary judgment. Rucker asks the court to reverse the decision denying her application and grant her SSI benefits as of the date of her initial application, or alternatively, to reverse and remand to obtain the testimony from a vocational expert. The Commissioner, on the other hand, seeks an order affirming the decision to deny Rucker's SSI application. For the reasons explained below, the court grants summary judgment in favor of the Commissioner.

### Procedural History

Rucker filed an application for SSI benefits on May 22, 1997, alleging that she was disabled as a result of having lupus and high blood pressure. (R. 72-74, 76.) The Social Security

Administration (the "Agency") denied both her initial application and her request for reconsideration. (R. 49-56.) Rucker timely requested an administrative hearing, which was held on March 17, 1999 by Administrative Law Judge Alan Jonas ("ALJ"). (R. 15.) In a decision issued on August 26, 1999, the ALJ concluded that Rucker was not disabled within the meaning of the Social Security Act or its related regulations because she had the ability to perform sedentary work, and thus was not entitled to SSI based on her May 22, 1997 application. (R. 15, 21.) Rucker then requested a review of the ALJ's decision by the Appeals Council, which was denied in a letter dated October 18, 2001 (R. 6-8),[1] thus making the ALJ's decision the Agency's final decision regarding her May 17, 1997 application. *See* 20 C.F.R. §§ 416.1481. Rucker has appealed the ALJ's decision to the federal district court. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## Background

At the time of the ALJ's decision, Rucker was 48 years old. She has a high school education, had worked as a factory worker in the past, but had not engaged in substantial gainful activity since before she applied for SSI benefits. (R. 23.) At the administrative hearing, Rucker presented evidence relating to both physical and psychological impairments. Based on the evidence presented, the ALJ found that Rucker has lupus erythematosus, rheumatoid arthritis, diffuse osteopenia, fibromyalgia, cardiomyopathy, left ventricular hypokinesis and moderate mitral valve regurgitation. (R. 23.) The ALJ found that these physical impairments were severe, but that any psychological impairment (namely, depression) was not. (R. 17-18.) Further,

---

[1] Rucker filed a second SSI application on May 19, 2000, and was found to be disabled as of May 1, 2000. The Appeals Council considered that fact, but determined that it did not warrant a change in the ALJ's ruling. (R. 6.)

2

although he found Rucker's physical impairments to be severe, he concluded that she retained "the residual functional capacity to perform the exertional demands of sedentary work" and had "no significant non-exertional limitations which narrow the range of work she can perform." (R. 23.) Taking into account Rucker's exertional capacity for sedentary work, her age, educational background, and work experience, the ALJ used the Agency's Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grid") and determined that Rucker did not qualify as disabled under the regulations. (R. 23.)

## Analysis

In determining whether Rucker is disabled within the meaning of the Social Security Act, the ALJ had to evaluate: (1) whether Rucker was currently unemployed; (2) whether she has a severe impairment;[2] (3) whether her impairment satisfies the criteria for any of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1 ("Listing"); (4) whether Rucker is able to perform her past work; and (5) whether she has the ability to perform work available in the national economy. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). A conclusion that a claimant's impairment qualifies as one of the Listing impairments results in a finding that a claimant is disabled. *Id.* Likewise, even if the impairment does not qualify as a Listing impairment, if the ALJ concludes that the claimant lacks the ability to perform work available in the national economy after assessing the claimant's residual functional capacity, the claimant is deemed disabled within the meaning of the Social Security Act. Here, however, after conducting this five-step inquiry, the ALJ concluded that Rucker was capable of performing work available in the national economy,

---

[2]A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c).

and thus was not disabled within the meaning of the Social Security Act.

Rucker challenges the ALJ's decision on two different grounds, both of which relate to the ALJ's findings regarding her depression, rather than her physical impairments. First, she argues that the ALJ's conclusion regarding her mental impairment—namely, that her depression was not severe and imposed no more than a minimal limitation on her ability to function—is not supported by substantial evidence, and thus constitutes an error of law. Second, Rucker contends that the ALJ committed an error of law by relying on the grid to determine that there were a significant number of jobs in the national economy that Rucker had the ability to perform. According to Rucker, her depression "had more than a minimal effect on her ability to perform substantial gainful activity[.]" (Pl.'s Mot. at 14.) Therefore, rather than using the grid, the ALJ should have obtained an opinion from a vocational expert "who would have taken into account both [Rucker's] exertional and nonexertional [*i.e.*, mental] functional limitations to determine whether there were a significant number of jobs that [Rucker] could perform." (*Id.*) The Commissioner contends that the ALJ's conclusions about Rucker's depression are supported by substantial evidence, and that the ALJ's decision to rely on the grid was proper. As explained below, the court agrees with the Commissioner on both points.

Under the Social Security Act, 42 U.S.C. § 405(g), the ALJ's decision must be upheld as long as it is supported by substantial evidence. *Clifford*, 227 F.3d at 869. The substantial evidence standard "requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Further, although the reviewing court considers the entire record, the court "may not decide the facts anew, re-weigh the evidence

or substitute its own judgment for that of the [ALJ] to decide whether a claimant is or is not disabled." *Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on [the ALJ, as designate of the Commissioner]." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

In Rucker's first challenge, she argues that the ALJ's determination that her mental impairment was not severe is not supported by substantial evidence. At the heart of this argument is Rucker's contention that the ALJ either failed to consider or improperly disregarded certain medical opinions regarding Rucker's depression, namely the opinions in the notes of Rucker's treating therapists during 1998. Rucker argues that the ALJ relied on the opinions of Social Security doctors from 1996 and 1997, disregarding the notes from Rucker's treating doctors and/or therapists at Mt. Sinai Hospital and Medical Center ("Mt. Sinai")[3] and Rush-Presbyterian-St. Luke's medical center ("Rush") from 1998 after Rucker started psychiatric treatment.

Although Rucker cites to various notations in the Rush records and the Mt. Sinai records from 1998,[4] her argument focuses primarily on the fact that on September 18, 1998, the

---

[3] Rucker refers to notes from Miles Square Community Mental Health Center, Mt. Sinai Hospital Medical Center, and Mt. Sinai Hospital and Medical Center—Psychiatry and Behavioral Health section. It is unclear from the record whether these notes are from one entity, or three entities. Regardless, they are all part of Mt. Sinai Hospital and Medical Center. Thus, for purposes of this opinion, they are referred to collectively as "Mt. Sinai."

[4] The Rush records indicate that in February 1998, Rucker was referred to the psychiatry department for depression. (R. 296). The Rush notes also indicate that in May 1998, Rucker complained of depression and mild insomnia, and that the medication she was taking (Elavil) no longer helped the depression. (R. 379-380.) The Mt. Sinai records include, for example, notations that in September 1998 Rucker had symptoms such as fast, rapid speech, sad affect,

5

multidisciplinary staffing team at Mt. Sinai diagnosed Rucker as having Major Depression with Anxiety—Single Episode ("Major Depression"), (R. 316, 329), and gave her a global assessment of functioning (GAF) score between 52 and 55. (R. 327, 329). Rucker contends that this evidence is uncontroverted and dispositive, and shows that her mental impairment was severe. She argues that the ALJ failed to mention this evaluation, let alone explain why he was rejecting it, when he concluded her mental impairment due to depression was not severe, and in doing so, made a finding unsupported by substantial evidence.

There are several flaws in Rucker's argument. First, despite her argument to the contrary, the September 1998 diagnosis of Major Depression does not establish that Rucker's depression was severe, let alone that it caused significant limitations in her ability to perform basic work activities. The label "Major Depression" is somewhat misleading: Major Depression is not necessarily severe depression. Major Depression can be mild, moderate, severe without psychotic features, severe with psychotic features, etc. DSM IV at 319.[5] The Mt. Sinai multidisciplinary staffing team assigned Rucker a diagnostic code of 296.22. (R. 329.) The "296" stands for Major Depressive Disorder. The fourth digit, 2, indicates that there has been a single episode, rather than recurrent major depressive episodes. The fifth digit, 2, indicates that her depression is moderate. DSM IV at 319. Similarly, as Rucker herself points out, her GAF score indicates that her functioning was only moderately affected. The GAF Scale is a one-

---

anxiety, and feelings of helplessness and hopelessness, and that she "appears to cover her true feelings with socially acceptable behaviors of smiling and joking when these adaptive behaviors are inconsistent with the intense physical and emotional pain she experiences at this time." (R. 347-48.)

[5]Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., Washington D.C., American Psychiatric Association (1994).

hundred point scale that scores a person's psychological, social and occupational functioning. DSM IV at 32. A GAF of 51-60 indicates "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id.* (emphasis omitted). Thus, the September 1998 diagnosis and GAF score are consistent with the ALJ's conclusion that her depression was not a severe mental impairment.

Additionally, although the ALJ made no reference to the September 1998 diagnosis in his written opinion, an ALJ has no obligation to discuss every piece of evidence. *Clifford*, 227 F.3d at 872 (ALJ need not address each piece of evidence); *Walker*, 834 F.2d at 643 (must discuss specific evidence only if that evidence is uncontradicted). Instead, he need only "articulate his rationale sufficiently to allow meaningful review." *Walker*, 834 F.2d at 643. To state it another way, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872.

Here, it is evident from the ALJ's written opinion that he considered the records from Mt. Sinai, which included the September 1998 diagnosis. Prior to the administrative hearing, Rucker submitted her records from Mt. Sinai for the period between August 18, 1998 and February 3, 1999—the period when Rucker was seeking therapy at Mt. Sinai. (R. 315, 318-365.) The ALJ's assessment of Rucker's depression explicitly references that time period, explaining that Rucker inconsistently attended therapy during that time frame, and that by the end of January 1999, although she continued to report that she was depressed, the therapist noted that "there was no indication that the depression impacted on her ability to maintain daily functioning such as

7

keeping up her daughter's apartment and being socially active."[6] (R. 17, citing R. 364.) The ALJ went on to discuss the earlier mental health assessments conducted at the Agency's request. (R. 17-18.) After doing so, he concluded that although Rucker indicated that she was depressed, and the record showed that she has taken anti-depressant medications, "the record, when viewed in its entirety, does not support a conclusion that the claimant's depression imposes any more than a minimal limitation on her ability to function." (R. 18.) The ALJ therefore concluded that Rucker's depression was "a non-severe impairment as defined in § 416.921(a) of the regulations." (R. 18.) The ALJ's articulation of the basis for his decision, as set forth in the record, is sufficient.

Furthermore, despite Rucker's argument to the contrary, this is not a case in which the ALJ "substitute[d] his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870; *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). There is evidence in the record from Rucker's treating therapists that her depression was *moderate*, (R. 316, 329), that her depression did not affect her ability to maintain daily functioning, and that her functioning was stable, (R. 363-64). Based on this evidence, which is neither contradictory nor inconsistent, a reasonable person could conclude that a claimant could be moderately depressed (*e.g.*, have flat affect, or few friends), *see* DSM IV at 32, yet not be significantly limited in her abilities to do basic work activities, *see* 20 C.F.R. § 416.921(a). Additionally, even if it there were a conflict in the evidence, it is the ALJ's role to

---

[6]The therapist's notes actually stated: "[T]here is no indication at the current time that [the depression] impacts on her daily functioning— she is engaged in maintaining the home environment, keeps [medical doctor's appointments] & active within her social network." (R. 364.)

8

resolve such conflicts, not the court's. *See Walker*, 834 F.2d at 640. A reasonable person could certainly find the treating therapist's comments from January 1999 to be the more persuasive than the earlier diagnosis.

The court holds only that this particular case is not a case in which the ALJ reached a conclusion contrary to the assessments by mental health professionals. *C.f., e.g., Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) (reversing and remanding because ALJ's decision went against only medical evidence in the case regarding claimant's depression); *Craig v. Apfel*, 10 F. Supp. 2d 966, 968-70 (N.D. Ill. 1998) (remanding ALJ's decision that rejected doctor's conclusion that claimant's depression was severe enough to satisfy Listing requirements). As the Seventh Circuit has repeatedly stated, "health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it." *Wilder*, 64 F.3d at 337. The records from the treating mental health professionals here show that Rucker suffered from moderate depression, and was stable in her ability to function on a daily basis. The ALJ's ruling that Rucker's depression did not constitute a severe mental impairment (*i.e.*, did not significantly limit her ability to perform basis work activities) is supported by those expert assessments, and thus must be upheld.

In Rucker's second challenge, she argues that the ALJ erred by applying the grid rather than obtaining the opinion of a vocational expert who would consider whether, based on Rucker's exertional and nonexertional limitations (*i.e.*, her depression), there were a significant number of jobs she could perform. "The grid is a chart which classifies a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience." *Walker*, 834 F.2d at 640. "[U]se of the grid may be inappropriate **if the claimant suffers from severe non-exertional impairments**, including pain, which prevent the claimant from

9

performing the work indicated by the grid." *Id.* at 640-41 (emphasis added). Psychological impairments such as depression are nonexertional impairments that should be considered in evaluating a claimant's limitations. *Id.* at 642. However, the fact that a claimant "suffers from a non-exertional impairment does not . . . immediately preclude utilization of the grid." *Id.* (quotation marks omitted). Rather, the ALJ must determine "whether the claimant's non-exertional impairments are severe enough to limit the abilities of the claimant substantially." *Id.* An ALJ's decision to use the grid must be upheld "as long as substantial evidence supports its use." *Id.* at 641.

As discussed above, the ALJ considered Rucker's depression and concluded that it was not a severe impairment.[7] The ALJ then utilized the grid to determine whether she qualified as disabled based on her physical limitations, age, education and work experience. As explained above, there is substantial evidence in the record supporting the ALJ's conclusion that Rucker's depression was not severe. His decision to use the grid, which stems from his decision that her depression did not constitute a severe impairment, is likewise supported by substantial evidence, and is therefore upheld.

---

[7] Rucker actually argues that the ALJ should have considered the symptoms of her depression (*e.g.*, impaired sleep, fatigue, anxiety, tearfulness, etc.), rather than the depression itself. The ALJ considered her symptoms when he evaluated the severity of her depression. (R. 17-18.) Upon concluding that her depression was a non-severe, nonexertional impairment, his consideration of both the depression, and its corresponding symptoms, properly ended.

## Conclusion

Accordingly, the court grants summary judgment in favor of the Commissioner and against Rucker.

                                                _____
                                                NAN R. NOLAN
                                                United States Magistrate Judge

Dated: November 14, 2003